**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**SALLY SUE ANDREWS,**

**Plaintiff,**

**v.**

**Civil Action No. ________________**
**JURY TRIAL DEMANDED**

**COSTCO WHOLESALE CORPORATION,**

**and**

**AGREE CONVENIENCE NO. 1, LLC,**

**Defendants.**

## COMPLAINT

NOW COMES the Plaintiff, Sally Sue Andrews (hereinafter Plaintiff or "Sally Sue"), by counsel, and for her Complaint against the Defendant Costco Wholesale Corporation and its allied limited liability company, Agree Convenience No. 1, LLC (jointly referred to herein as "Costco"), states the following:

## INTRODUCTION/SUMMARY

1. On May 19, 2025, the Plaintiff, Sally Sue Andrews, age 85, was seriously injured in a fall from a motorized seated shopping cart supplied to her by Defendant, Costco. Plaintiff's injuries were caused by a hidden danger on Costco's premises at its Newport News, Virginia store that was known or should have been known to the Defendant Costco, but was unknown and neither open nor obvious to Andrews, when she turned the motorized seated shopping cart from a Costco sidewalk onto pavement that appeared flat and even with the sidewalk, but unexpectedly, it was not flat or even with the sidewalk; consequently, the motorized seated shopping cart flipped over throwing her onto the pavement proximately causing her to break her hip, break her

neck, and blow out her eardrum, injuries that resulted in 7 months of hospitalization and rehabilitation treatments that have left her seriously and permanently disabled.

**PARTIES**

2. Plaintiff is and at all times relevant herein was a citizen and resident of Newport News, Virginia.

3. Defendant, Costco, is a foreign corporation organized under the laws of the state of Washington, with a principal place of business at 999 Lake Drive, Issaquah, Washington 98027, and is registered with their headquarters at the Secretary of the Commonwealth of Virginia to do business in the Commonwealth of Virginia and at all times mentioned herein was conducting business in the Commonwealth of Virginia. The Defendant Costco's registered agent for service of process is C T Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060-6808. Costco is the Lessee of property in Newport News, at 12121 Jefferson Avenue, Newport News, Virginia, where it operates a wholesale warehouse and tire center.

4. Defendant Agree Convenience No. 1, LLC is a foreign limited liability company whose address is 32301 Woodward Avenue, Royal Oak, Michigan 48073. This company is a successor by merger to Agree Newport News VA, LLC, a Delaware limited liability company, that is now inactive and was formerly located at 70 East Long Lake Road, Bloomfield Hills, Michigan 48304. The Defendant Agree Convenience No. 1, LLC, is registered to do business in the Commonwealth of Virginia, and its registered agent for service of process is C T Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060. Agree Convenience No. 1, LLC, is the owner of the property in Newport News, Virginia, where Costco operates a Wholesale Warehouse and Tire Center at 12121 Jefferson Avenue, Newport News, Virginia 23602. Upon

information and belief, no member of Agree Convenience No. 1, LLC is a citizen of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy, which exceeds $75,000.00, exclusive of interest and costs.

6. The Defendant Costco Warehouse Corporation is subject to the specific personal jurisdiction of this Court because since 1999 Defendant Costco Warehouse Corporation has leased and continuously operated and controlled the buildings, sidewalks, and pavement of a large Costco warehouse sales facility at 12121 Jefferson Avenue in Newport News, Virginia, that is and has been continuously open to the public for shopping 8-12 hours per day, 7 days a week.

7. The Defendant Agree Convenience No. 1, LLC, is subject to the specific personal jurisdiction of this Court because on May 2, 2019, its predecessor Agree Newport News VA, LLC, purchased the land buildings, sidewalk, and pavement where Costco operates its warehouse and Tire Center; and by merger on or about April 28, 2021, between Agree Newport News VA, LLC, Agree Convenience No. 1, LLC, became and continues to be the current owner of the aforesaid property where Costco operates its Wholesale Warehouse and Tire Center.

8. The accident which caused the Plaintiff's injuries was caused by hidden unreasonable dangers and unsafe conditions that occurred on the premises whose address is 12121 Jefferson Avenue, Newport News, Virginia, a location that is leased by the Costco Warehouse Corporation and owned by Agree Convenience No. 1, LLC, which is located in the United States District Court for the Eastern District of Virginia, Newport News Division.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) & (3) because Defendants are subject to personal jurisdiction in this District and all the events giving rise to Plaintiff's claims alleged herein occurred in this District.

**COUNT I – COSTCO'S NEGLIGENT FAILURE TO ADEQUATELY WARN OF AN UNREASONABLY DANGEROUS AND UNSAFE CONDITION ON ITS PREMESIS OR TO PROTECT SALLY SUE ANDREWS, A BUSINESS INVITEE OF COSTCO, FROM THAT HIDDEN DANGER WAS THE PROXIMATE CAUSE OF HER PERMANENT AND SERIOUS PERSONAL INJURIES**

10. Except as specifically stated as occurring on a later date, in all references herein to the acts, knowledge, and negligence of the Defendants and the descriptions or condition of their premises at their Newport News, Virginia, Warehouse and Tire Store, such references are to their acts, knowledge, and negligence on or before May19, 2025, and to the condition of Defendants' premises on May 19, 2025 the date of the Plaintiff, Sally Sue Andrews' injuries on Costco's premises. Further, in this Complaint the Defendants shall be jointly referred to as "Costco."

11. Costco Warehouse Corporation is a large retail sales organization with stores and warehouses throughout the United States that market to the public a wide variety of consumer goods at discount prices in large, cavernous "box stores." There are approximately 600 such warehouse retail stores in the United States and 17 in Virginia.

12. Costco Warehouse stores, including the subject Newport News store, specifically market their products to elderly and disabled men and women by providing a fleet of motorized seated shopping carts to facilitate the purchase of goods by disabled and/or elderly patrons of their store.

13. The supplier of the Defendant Costco's motorized seated shopping carts at its Newport News Store is Amigo Mobility International, Inc., a Michigan corporation, which is an

independent contractor that provides motorized seated shopping carts, operating instructions, and safety information to Costco. Amigo is not a named party to this lawsuit.

14. Costco has a non-delegable duty to protect the safety of its business invitees (patrons of its stores, shoppers) from hidden dangers on its premises that it knows about or reasonably should know about, including dangers that are hidden from the elderly or disabled patrons who operate these motorized seated shopping carts on the premises owned and controlled by Costco.

15. Business invitees on Costco's premises, including Sally Sue Andrews and other disabled or elderly operators of motorized shopping carts, have the right to assume that the premises is reasonably safe in all areas under the control of the Costco.

16. Costco expressly or impliedly consented and invited business invitees, including the Plaintiff, Sally Sue Andrews, to operate a motorized seated shopping cart inside the Costco Warehouse and outside the Warehouse to deliver purchased goods to their cars wherever their cars may be parked on the Costco premises, including transit to their cars on the entrance areas to the Warehouse, the sidewalk and curb in front of the Costco Tire Center, the pavement of the street in front of the Warehouse and Costco Tire Center, and the parking areas associated with both the Costco Tire Center and the Costco Warehouse.

17. On May 19, 2025, the Plaintiff, Sally Sue Andrews, age 85, was seriously injured in a fall from a motorized seated shopping cart supplied to her by Costco that was caused by a hidden danger on Costco's premises at its Newport News, Virginia, store that was known or should have been known to Costco, but that was unknown and neither open nor obvious to Andrews, when she turned the motorized seated shopping cart from a Costco sidewalk onto pavement that appeared flat and even with the sidewalk, but unexpectedly, the pavement was not

flat or even with the sidewalk; consequently, the motorized seated shopping cart flipped over throwing her onto the pavement and proximately causing her to break her hip, break her neck, and blow out her eardrum, injuries that resulted in 7 months of hospitalization and rehabilitation treatments that have left her seriously and permanently disabled.

18. A condensed sequence of events leading to this fall are as follows: (in these subparagraphs the Plaintiff, Sally Sue Andrews is referred to as Sally Sue and her son, Andy Andrews is referred to as Andy).

a. On Sunday, May18, 2025, Andy Andrews, the son of Sally Sue took Sally Sue's car to the Newport News Costco Tire Center to repair a flat tire.

b. On Monday morning, May 19, 2025, Sally Sue was notified that the employees of the Costco Tire Center had fixed Sally Sue's flat tire and parked it in a parking space in Costco's parking lot near the front of the Tire Center.

c. For several years prior to May 19, 2025, Sally Sue has been designated by the Division of Motor Vehicles for the State of Virginia as a handicapped person, and the DMV has issued her a handicap card to prominently display on the rear-view mirror in her car whenever she is parked in a public handicap parking space. *See Figure 1*. This card was prominently displayed between the passenger seat and the console when her car was delivered to Costco for repairs by Andy.




***Figure 1 – Sally Sue's DMV Handicap Parking Card.***

d. On Monday afternoon, May 19, 2025, Andy drove Sally Sue to the Costco Tire Center in his car for Sally Sue to pay the cost of repairs and retrieve her car.

e. Upon arrival in the Costco Parking lot, Sally Sue and Andy found where her car had been parked in a non-handicap parking space by Costco employees. *See Figure 2.*




***Figure 2 – Location where Sally Sue's car was parked by Costco Tire Center***

f. Andy then parked his car near the entrance to the Costco Warehouse and walked with his mother to the entrance to the Costco Tire Center and held the door for her to go in.

g. Sally Sue then walked into the Costco Tire Center and paid the repair bill, retrieved the keys to the car, and walked next door to Costco Warehouse to shop.

h. When Sally Sue walked into the Costco Tire Center to pay for the tire repairs, Andy went next door for a quick bite to eat and then drove home in his car.

i. When Sally Sue walked in public spaces, she usually used a cane, and it had been her custom for many years of shopping at this Costco Warehouse to use a motorized seated shopping cart which she picked up at the Costco entrance and used for shopping and then routinely drove to her car to unload her purchases. *See Figure 3.*




***Figure 3 – Amigo Shopping Cart supplied to Sally Sue and other disabled patrons at the Costco Warehouse***

j. After purchasing 3 items and placing them in her 2-foot by 2-foot by 2-foot basket on the front of Costco's motorized seated shopping cart, Sally Sue had her paid receipt checked at the exit door by a Costco employee (as required for all customers at Costco) and proceeded, without objection from Costco, to drive the motorized seated shopping cart toward the area in front of the Costco Tire Company where her car had been parked by Costco employees.

k. The entrance and exit area at the Newport News Costco Warehouse has an approximately 130-feet wide and 20-feet deep concrete walkway. The street slopes upward to the walkway; consequently, there is no curb in this area so that shoppers can push hand carts or drive motorized seated shopping carts to their parked cars. *See Figures 4-5.*




*Figure 4 – Flat entrance to Costco Warehouse – Front view*




*Figure 5 – Flat entrance to Costco Warehouse – Side view*

l. The Costco Tire Center is contiguous and adjacent to the Costco Warehouse but that building juts into the Costco Warehouse entrance and exit area, and the entrance to the Costco Tire Center is perpendicular to the entrance and exit area for the Costco Warehouse. *See Figure 6.*




***Figure 6 – Costco Tire Center adjacent to Costco Warehouse entrance***

m. Prior to this occasion Sally Sue had always parked her car in a handicapped parking space in front of the Costco Warehouse entrance. The handicapped parking space provided extra room for her to unload the basket of her motorized seated shopping cart and she would typically leave the motorized seated shopping cart there.

n. The entrance to the Costco Tire Center does not face the parking lot. A blank 20-foot high brick wall of the Costco Tire Center with a 5-foot-wide sidewalk faces the parking lot where Sally Sue's car had been parked by the Costco Tire employees. The sidewalk is parallel to the pavement of the street, and it connects directly to the wide entrance and exit area of the Costco Warehouse. *See Figure 7.*




***Figure 7 – Wall of Costco Tire Center facing the parking lot with narrow 5-ft. sidewalk and 6-in. curb – View from the street***

o. The 130 feet of flat surface—parallel to the street in front of the Costco Warehouse and the full length of the adjacent sidewalk—has a 6-inch ribbon of yellow paint that is required by the Newport News fire department and the State Fire Code to advise cars that it is a "No Parking Lane."

p. The sidewalk in front of the Costco Tire Center is used by business invitees and customers for ingress and egress from both the Costco Tire Center and the Costco Warehouse.

q. Near the end of the 130 feet of flat pavement of the entrance and exit to the Costco Warehouse, the slope of the street declines and a curb begins to gradually elevate as the wide Costco Warehouse entrance area narrows to a 5-foot wide sidewalk in front of the wall of the Costco Tire Center. *See Figure 8.*




***Figure 8 – Flat entrance to Costco Warehouse, flat sidewalk, but the street slopes downward at the Costco Tire Center to create an invisible curb which begins where the red arrow is located on this photograph.***

r. The 6-inch ribbon of yellow paint continues on the left hand side of the sidewalk for another 50 feet or more feet toward the Costco Tire Center garage.

s. As the slope of the street declines and the elevation of the curb changes, there is no change of color in the 6-inch wide yellow paint on the surface of the sidewalk, no red paint to contrast with the concrete or the yellow "no parking" paint, no warning signs on the pavement or on the sidewalk or on the building that the sidewalk is no longer flat or even with the pavement, and there are no safety barriers to foot traffic or to motorized carts on the sidewalk. *See Figure 9.*



***Figure 9 – Pedestrian walkway discloses no visible curb from the sidewalk.***

t. As the slope of the street declines and the elevation of the curb gradually rises from flat to 6 inches on Costco's sidewalk, the uninterrupted ribbon of yellow paint on the flat sidewalk creates an optical illusion by hiding the unreasonable danger of the fact that the sidewalk is no longer flat or even with the pavement of the street like it was at the entrance to the Warehouse.

u. As the broad entrance to Costco's Warehouse transitions to a sidewalk in front of the Costco Tire Center, the pavement on the entrance to the Costco Warehouse and the pavement on the sidewalk of the Costco Tire Center remain level and flat. However, within 20 feet of the entrance to the Costco Tire Center the elevation of the street declines gradually for drainage of the parking lot. This decline in the level of the street creates a curb on the sidewalk in front of the Costco Tire Center that gradually rises to 6 inches or more from the pavement of the street; whereas there is no curb on the 130 feet of flat surface in front of the entrance to the Costco Warehouse. The sidewalk in front of the Costco Tire Center, therefore, appears to be level with the pavement on the entrance to the Costco Warehouse and there is no visual perception on the Tire Center sidewalk of any change in the height of the walking surface.

v. This decline in the level of the street in its parking lot to facilitate drainage and the creation of a flat sidewalk with a curb hidden by yellow paint was

designed and constructed at the direction of Costco and is set forth in detail in their construction Site Plans in 2015.

w. The six inch ribbon of yellow paint on the Costco Warehouse entrance pavement and the Costco Tire Center sidewalk curb was requested to be installed by Costco in accordance with its 2015 Site Plans and it was also required by the Virginia Fire Code regulations to designate "No Parking" to operators of vehicles driving on the parking lot. This yellow paint was not intended by Costco or the Newport News Fire Department as a warning of any danger associated with either the entrance to the Costco Warehouse or the Costco Tire Center sidewalk.

x. Due to the uninterrupted ribbon of yellow paint on Costco's sidewalk that concealed the danger of an invisible curb, the only way for a person on the sidewalk—either on foot or in a motorized shopping cart—to know the danger associated with the fact that the sidewalk was no longer flat is from stepping off of the sidewalk into the adjacent street pavement and looking back at the Costco Buildings to see the vertical side of the rising curb. *See Figures 10 and 11.*




***Figure 10 – View from the street showing rising curb 15-20 feet prior to the pedestrian crosswalk which should be flat to the sidewalk.***




***Figure 11 – Yellow arrow and red arrow demonstrate the distance for which there is a curb prior to the pedestrian walkway which should have been flat.***

y. The visibility or perception of any change in the elevation of the sidewalk is also diminished by the 2-foot wide by 2-foot wide basket that is directly in the line of vision of the operator of a motorized seated shopping cart.

z. Costco's sidewalk was unreasonably dangerous because the uninterrupted ribbon of yellow paint concealed an invisible 5-inch curb and that danger was magnified by (i) the absence of any visual warning or verbal warning by Costco, (ii) the lack of any red paint on the sidewalk, the curb, or the pavement, or other symbol or sign of danger in the street, on the sidewalk, or on the building to alert customers of danger and to provide a safe path of travel, or (iii) the lack of a protective barrier between the sidewalk, the curb, and the pavement.

aa. As Sally Sue exited Costco in her Costco motorized seated shopping cart, she drove inside the yellow ribbon of paint across the flat entrance to Costco's Warehouse toward her car which was parked in front of the Costco Tire Center. *See Figure 12.*




***Figure 12 – Sally Sue on Costco's motorized scooter captured on Costco's video camera seconds before her fall.***

bb. When Sally Sue reached the entrance to the Costco Tire Center, the curb began to rise and the street abutting the curb began to decline, but that dangerous change in elevation was hidden from her; and as she continued approximately 25 feet further, the sidewalk continued to look flat and even with the street and the elevation of the curb remained hidden from her by the uninterrupted ribbon of yellow paint and the lack of any warning, red paint or other change of paint color, sign or symbol of danger, or exit ramp by Costco. *See Figures 13-15.*




***Figure 13 – Sidewalk pathway taken by Sally Sue toward the Costco Tire Center.***



***Figure 14 – Approximately 20 feet prior to the Tire Center on the pathway taken by Sally Sue in her motorized scooter.***



***Figure 15 – Approximately 5 feet prior to Sally Sue's entrance onto the narrow sidewalk.***

cc. At that point Sally Sue, believing that the street pavement was flat to the sidewalk, attempted to turn her motorized seated shopping cart onto the street en route to her parked car in front of the Tire Center. As the front wheels of Costco's motorized seated shopping cart turned left toward her parked car, she passed over the yellow paint and her motorized seated shopping cart flipped over as it fell over a curb that she never knew was there. *See Figure 16.*




***Figure 16 – The approximate location where Sally Sue fell is represented with a blue circle and the red arrow designates where the curb began to elevate.***

19. At the time of Sally Sue's accident, Costco was fully aware and had actual knowledge of the danger associated with sidewalk curbs to motorized shopping carts because they have been defendants in previous serious personal injury claims, lawsuits, and or settlements of serious accidents involving substantially similar circumstances and injuries to elderly or disabled Costco customers driving motorized seated shopping carts exactly like the one used by Sally Sue.

20. The risk of serious falls from motorized seated shopping carts that are caused by driving the cart over an unseen danger of a sidewalk curb are well known to Costco and the large store retail industry from multiple publications in the popular national press, but Costco took no steps to protect Sally Sue from this risk.

21. In published litigation from similar personal injury claims in other locations, Costco defended its negligence by relying on the use of red paint on their curbed sidewalks for contrast with the concrete sidewalk and the adjacent asphalt to warn of this hidden danger and unsafe condition, but on the premises of its Newport News Warehouse and Tire Center there was no red paint or other warning symbol or sign on the curbed sidewalk, the pavement, or the adjacent walls to warn Sally Sue of the hidden danger and unsafe condition of the curb.

22. In response to the universally well known risk in the retail shopping business of accidental injuries from elderly and disabled business invitees who use motorized seated shopping carts in the store and drive those motorized seated shopping carts over hidden curbs en route to their cars in the parking lot, the standard of care in the large retail industry for avoiding these accidents is the use of physical barriers to prevent motorized shopping carts from being used where the exit area is not flat. This easily feasible safety practice has been adopted by numerous similar local large retail outlets including, without limitation, Publix Grocery store in Williamsburg, Virginia, prior to May 19, 2025. *See Figure 17.*



***Figure 17 – Barriers erected by Publix grocery store in Williamsburg, Virginia, to prevent falls from hidden curbs on the ingress and egress corridor to the store.***

23. Costco was expressly warned by the supplier of its motorized shopping carts that these carts should only be used inside the store, but Costco ignored that advice and consented to and encouraged the daily use of its motorized shopping carts outside of the store by nearly all of the disabled and elderly users of these carts. In a recent visit to Costco's store on November 25, 2025, 16 disabled or elderly patrons were photographed or videotaped driving motorized carts out of the Newport News Costco Warehouse in a period of only 2 hours. *See Figures 18-21.* These photos demonstrate Costco patrons driving Costco motorized scooters to their cars to unload their purchases.



***Figure 18 – Example 1 of many Costco motorized scooters in the street after shopping.***



***Figure 19 – Example 2 of many Costco motorized scooters in the street after shopping.***



***Figure 20 – Example 3 of many Costco motorized scooters in the street after shopping.***



***Figure 21 – Example 4 of many Costco motorized scooters in the street after shopping.***

24. During these 2 hours and on other days multiple Costco employees were tasked with retrieving the hand carts and the motorized carts from the Costco parking lot. Accordingly,

upon information and belief, thousands of Costco customers in Newport News drive these motorized scooters to their cars to unload their purchases every year prior to May 19, 2025. This long-standing conduct by Costco employees prior to Sally Sue's accident, renders meaningless any recommendation by the manufacture of the motorized carts to Costco or to Costco's patrons that these carts only be used inside the store. *See Figures 22-24.*



***Figure 22 – Costco employee returning motorized scooter from parking lot to warehouse entrance.***




***Figure 23 – Costco employee returning motorized scooter from parking lot to warehouse entrance.***



***Figure 24 – Some patrons drive Costco's Costco's motorized scooters into the parking lot and leave them with push carts.***



***Figure 25 – Some patrons drive Costco's motorized scooters into the parking lot and leave them in the handicap parking spaces where they had parked their cars.***

25. Costco does not offer or provide information to its elderly and disabled customers of any alternative means of getting the goods that are purchased by disabled or elderly users of its motorized shopping carts to the cars for these customers where their goods can be unloaded. Costco also does not train its employees to give advice to motorized shopping cart users that there are alternative means of getting their purchased goods to their cars.

26. Costco has multiple surveillance cameras which captured the accident on film and demonstrate where the accident occurred and the fact that Sally Sue was turning toward the area where Costco employees had parked her car when the front wheels of her motorized Costco shopping cart went over the curb and she was thrown onto the pavement.

27. Costco negligently breached it duty to protect the safety of Sally Sue while she was a business invitee on the premises of Costco property as follows:

a. Costco negligently failed to warn Sally Sue and its other business invitees of the unreasonable hidden danger from the invisible elevated curb of the sidewalk where her motorized shopping cart fell onto the pavement of the street.

b. Costco negligently failed to use red paint or any other signal or sign of danger to warn its elderly and disabled business invitees of the hidden dangers of the invisible elevated sidewalk curb to pedestrians, to users of push carts, and to drivers of motorized shopping carts that the pavement was no longer flat and that extra care should be taken to avoid accidental falling.

c. Costco negligently consented to and invited Sally Sue's and hundreds of additional elderly and disabled business invitees' use of the motorized shopping cart outside of the store where the hidden and unreasonable danger of the curbed sidewalk could cause a fall and serious injury.

d. Costco negligently ignored the warning of its supplier concerning the use of motorized shopping carts outside of the store and directly encouraged and consented to such usage by Sally Sue and its other disabled and elderly business invitees who were users of Costco's motorized shopping carts.

e. Costco negligently failed to utilize physical barriers to prevent the motorized shopping carts from accidentally driving over hidden curbs on sidewalks.

28. As a direct and proximate result of the aforesaid acts of negligence by the Defendant Costco in creating an unreasonably dangerous condition on its premises without warning or notice to its business invitees:

a. Sally Sue Andrews has suffered serious permanent and debilitating injuries from her fall at Costco as previously described that have and will require medical treatment and professional medical care and attention for the rest of her life, and such injuries may ultimately cause her death.

b. Sally Sue Andrews has been caused to expend huge amounts of money for her treatment, care, and rehabilitation for the injuries she received from her fall from the Costco motorized shopping cart, and such expenditures will continue for the remainder of her life.

c. Sally Sue Andrews has suffered enormous, constant, and unrelieved physical and emotional pain and suffering ever since May 19, 2025, and that pain and suffering is expected to continue for the rest of her life.

d. Sally Sue Andrew's happiness and joy from a normal independent life have been forever taken away from her by the injuries.

## COUNT II – NEGLIGENCE FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE AMERICANS WITH DISABILITES ACT ("ADA")

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28, inclusive, as if the same were hereto set forth at length.

30. The Defendant Costco is charged with knowledge of the Americans with Disabilities Act and is required to follow the dictates of that statute.

31. The Americans with Disabilities Act was enacted by Congress to assure that elderly and disabled persons such as Sally Sue Andrews were provided with safely designed and built pedestrian walkways and sidewalk ramps to avoid falls and personal injuries from sidewalks and curbs onto asphalt and streets.

32. The ADA requires special precautions to be taken to construct pedestrian walkways and to create ramps on sidewalks to facilitate the safe transit of elderly or disabled persons from elevated sidewalks to the pavement of the street.

33. No ADA-compliant exit ramp or pedestrian walkway was in place on the sidewalk in front of Costco's Tire Center to provide a safe means of exit from the sidewalk to the pavement where Sally Sue's car had been parked by Costco employees. Had such an ADA-compliant exit ramp or pedestrian ways existed, it would have offered a safe means of exit from the sidewalk and alerted Sally Sue to the fact that there was a hidden curb beneath the yellow paint on the sidewalk. *See Figure 25.*



***Figure 25 – Sample of ADA-compliant ramp and pedestrian walkway at Penney's Department Store across the street from the Costco Warehouse in Newport News.***

34. In 2022 Costco built a defective and non-ADA compliant crosswalk in front of the Tire Center. As built, the crosswalk contradicted Costco's own construction plans and the ADA

requirements because the beginning of the crosswalk and the entire length of the crosswalk that was adjacent to the sidewalk had a curb that ranged from several inches to 6 inches in height. At no point was the pedestrian walkway flat or even with the sidewalk and the street pavement.

35. The pedestrian walkway, as built by Costco, failed to abrogate or eliminate the hidden danger of uneven curbs between the sidewalk and the street that appeared to be flat.

36. Costco negligently failed to provide a safe, ADA-compliant pedestrian walkway for its business invitees, including Sally Sue, to transit from the sidewalk by foot, with a hand pushed cart or with a motorized seated shopping cart from the Costco Tire Center sidewalk to the Costco parking area.

37. In the absence of a safe pedestrian walkway, Costco should have installed a safe ramp for transit from the elevated sidewalk to the street; but it did not.

38. Costco therefore negligently failed to install an ADA-compliant ramp on the Costco Tire Center sidewalk for the safe transit of elderly or disabled business invitees from the sidewalk to the street pavement and the parking lot regardless of whether such transit is by foot, with a hand pushed cart, or in a motorized seated shopping cart.

39. The accident and personal injuries of Sally Sue Andrews from her fall on May 19, 2025, were a direct and proximate result of the negligence of Costco in failing to comply with the requirements of the ADA for exit ramps on its elevated sidewalk and for safe pedestrian crossings adjacent to its elevated sidewalk.

**WHEREFORE**, Plaintiff demands as follows:

40. Judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined by the jury;

41. Trial by jury;

42. Plaintiff's costs herein expended; and

43. Any and all other relief which the Plaintiff may appear to be entitled, including the right to amend this Complaint, if necessary.

**PLAINTIFF DEMANDS A JURY WITH RESPECT TO ALL ISSUES TO WHICH SHE IS ENTITLED BY LAW TO A JURY**

SALLY SUE ANDREWS
By Counsel

______/s/ J. Gregory Webb______________

J. Gregory Webb, Esquire (VSB No. 38157)
E. Kyle McNew, Esquire (VSB No. 73210)
MichieHamlett PLLC
310 4th Street NE, 2nd Floor
Charlottesville, Virginia 22902
(434) 951-7200
(434) 951-7257 Facsimile
gwebb@michiehamlett.com
kmcnew@michiehamlett.com

Robert R. Hatten, Esquire (VSB No. 12854)
PATTEN WORNOM HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone (757) 223-4500
Facsimile (757) 249-3242
pleadings@pwhd.com
rrhatten@pwhd.com

*Counsel for Plaintiff*